UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JAMES K. DAVIS,**

      **Petitioner,**

                                                                                 Case No. 1:04-cv-294
v.                                                                         Hon. Wendell A. Miles

**KURT JONES,**

      **Respondent.**
_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    **I.**    **Background**

Following a jury trial, petitioner was convicted of voluntary manslaughter, MCL § 750.321 and possession of a firearm during the commission of a felony, MCL § 750.227b. He was sentenced as a fourth habitual offender, MCL § 769.12, to twenty to sixty years' imprisonment for the voluntary manslaughter conviction and a consecutive two-year term for the felony firearm conviction.

Petitioner presented the following issues and sub-issues in his direct appeal to the Michigan Court of Appeals:

    I.    Must [petitioner's] conviction for manslaughter be reversed where the prosecutor charged open murder but failed to present the jury sufficient evidence of premeditation and deliberation, thus creating the potential for an invalid compromise verdict?

  II.  Was [petitioner] denied a fair trial and due process of law by repeated instances of prosecutorial misconduct?

    A.  The prosecutor in his closing argument shifted the burden of proof to [petitioner].

    B.  The prosecutor argued misleading facts not in evidence to the jury.

    C.  The cumulative effects of repeated instances of prosecutorial misconduct denied [petitioner] a fair trial.

  III.  Was the sentence imposed disproportionate to both [petitioner] and the crime committed?

Petitioner's appellate brief (docket no. 28).

  The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Davis,* No. 217370 (Mich. App. Aug. 18, 2000).

  Petitioner raised the same issues in a delayed application for leave to appeal to the Michigan Supreme Court along with the following new issue:

  IV.  [Petitioner] was denied all the trial transcripts for appeal, which violated his procedural due process.

*See People v. Davis*, No. 117781 (Mich.) (docket no. 29). The Michigan Supreme Court denied petitioner's application. *Id.* (March 27, 2001).

  On February 15, 2002, petitioner filed a habeas corpus petition in this court, seeking habeas relief for claims of prosecutorial misconduct:

  I.  Petitioner was denied a fair trial and due process of law by repeated instances of prosecutorial misconduct.

    A.  The prosecutor in his closing argument shifted the burden of proof to the petitioner.

    B.  The prosecutor argued misleading facts not evidence to the jury.

      C.      The cumulative effect of repeated instances of prosecutorial misconduct denied petitioner a fair trial.

*Davis v. Jones*, 1:02-cv-105 (W.D. Mich.). The court granted petitioner's motion to voluntarily dismiss the suit and to exhaust additional claims. *Id.* (Order of Dismissal, Nov. 12, 2002).

On December 2, 2002, petitioner filed a motion in the state trial court for relief of judgment pursuant to MCR 6.500 *et seq.*, in which he raised three new claims:

    I.      [Petitioner] was deprived of his Sixth and Fourteenth Amendment rights to a fair trial and due process because of the systematic exclusion of African-Americans from his venire panel by Kent County.

    II.      [Petitioner] was deprived of his First and Sixth Amendment rights to a fair trial when the prosecutor argued that [petitioner] was not credible based on his religious beliefs and defense counsel failed to object.

    III.      [Petitioner] was deprived of his Sixth Amendment right to a fair trial when the prosecutor elicited testimony from a state witness that indicated [petitioner's] pretrial incarceration wherein he had communications with a "jailhouse lawyer" while in the county jail and defense counsel failed to object.

*See* docket no. 36. The trial court denied the motion in the following order:

> ON ORDER OF COURT the motion by the above-named defendant, James K. Davis, acting in pro per, for relief from judgment pursuant to MCR 6.502 *et seq*, is CONSIDERED, and the same is hereby DENIED, the Court finding the motion alleges grounds for relief which could have been raised on appeal from the conviction and sentence and that defendant has failed to demonstrate good cause for the failure to raise such grounds on appeal and actual prejudice from the irregularities, thus precluding relief pursuant to MCR 6.508(D)(3), and the Court further finding that, as determined by the Supreme Court in *People v. Smith*, 443 Mich 143 (2000), defendant was not denied his 6th Amendment right to impartial jury drawn from a fair cross section of the community, that defendant was not denied his 1st and 6th Amendment right to a fair trial by unobjected comments of the prosecutor in closing argument, and that defendant was not deprived of his 6th Amendment right to the effective assistance of counsel pursuant to the ruling of the Supreme Court in *People v. Pickens*, 446 Mich. 298 (1994).

*People v. Davis*, No. 98-00403-FC (Jan. 7, 2003).

Petitioner filed an application for leave to appeal the same issues to the Michigan Court of Appeals, which denied the application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Davis*, No. 246035 (May 21, 2003). Petitioner filed an application for leave to appeal the same issues to the Michigan Supreme Court, which denied the application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Davis*, No. 124028 (April 6, 2004).[1]

Now, petitioner has re-filed his habeas petition challenging his conviction on the grounds raised in his motion for relief from judgment:

I. Petitioner was deprived of his Sixth and Fourteenth Amendment rights to a fair trial and due process of law by the systematic exclusion of African-Americans from his venire panel.

II. Petitioner was deprived of his First and Sixth Amendment rights when the prosecutor argued that he was not a credible witness based on his religious beliefs and defense and appellate counsel failed to litigate this claim at trial or direct appeal.

III. Petitioner was deprived of his Sixth Amendment right to a fair trial when the prosecutor placed the jury on notice of his pretrial detention wherein he consulted with a "jailhouse lawyer" and defense and appellate counsel failed to litigate this claim.

---

[1] In a separate concurrence, Justice Marilyn Kelly stated as follows:

Although I would deny defendant's application for leave to appeal, I write separately to express my belief that the assistant prosecutor's references during closing argument to defendant's religious views were inappropriate under MRE 610. Defendant initially raised the matter of his faith. That did not authorize the assistant prosecutor to argue to the jury that defendant's religious beliefs were insincere, hence defendant was not credible. *People v. Leshaj*, 249 Mich App 417 (2002). However, under the circumstances of this case, I find this error to be harmless.

*People v. Davis*, No. 124028.

## II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner has met the exhaustion requirement.

### III.    Petitioner's claims are procedurally defaulted and not subject to federal habeas review

#### A.     Procedurally defaulted claims

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice."  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim

to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, the trial court, the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the issues raised in this re-filed habeas petition, because he failed to meet the burden of establishing entitlement to relief under MCR. 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) prevents habeas review. *See Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407. Accordingly, habeas review of these claims is precluded unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

**B.    Cause for the procedural default**

"[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

6

### 1.      Composition of Kent County jury venire (Issue I)

Petitioner does not make an explicit assertion of "cause" for the procedural default of Issue I, the alleged exclusion of African-Americans from the jury venire panel. Petitioner apparently contends that he did not raise this issue because it arises from a newly-discovered error in Kent County's method of selecting a jury venire, which was not known at the time of his trial or appeal.

Petitioner's trial counsel objected to the jury venire panel on the second day of trial, stating: that petitioner is an African American; that while 18% of Kent County's population is African American, only one of the 75 potential jurors was African American; that the jury composition did not constitute a fair representation of the community; and that the jury composition violated petitioner's "Sixth Amendment Constitutional Right to be allowed to pick a jury from a cross section of the community." Trial Trans. II at 4-6. The prosecutor opposed petitioner's objection, because petitioner had not shown any statistics to support the composition of the jury panel, and because the county substantially complied with the statutory requirements. *Id.* at 6-7. The trial court corrected petitioner's counsel, stating that the 18% figure referred to the City of Grand Rapids, and that the "county wide" African American population was about 7%. *Id.* at 4. The trial court concluded that the Kent County jury selection process was in conformity with the law:

> The jury pool is selected by computer in a process untouched by human hands using Secretary of State Driver's License information as required by law and the summonses are sent out in antiseptic process throughout the community and we do everything we can to ensure that the recipients of those summons show up. If a disproportionate number of people who happen to be African Americans don't show up at a given time, it inconveniences us greatly and undoubtedly causes [petitioner] and others similarly situated some angst but I don't believe there is a legal or constitutional problem with it.

> Under the circumstances, it seems to me that the motion must fail for failing to establish any grounds sufficient to allow us to grant it. Moreover as I've stated, the obvious delay of the process and continued incarceration of the defendant without trial, works a great hardship on him and a great strain on the Criminal Justice System itself. So in the absence of showing any so-called systematic exclusion here be it deliberate or not, it seems to me we should go forward with the panel as it presently exists.

*Id.* at 12-13.

Petitioner relies on an article in the *Michigan Lawyers Weekly* (Oct. 28, 2002), which referred to an announcement by Kent County officials in July 2002, that "they had unearthed a computer glitch that for 16 months drew a majority of jury candidates from the suburbs, excluding a wide pool of minorities." *See* docket no. 35. In *People v. Parker*, No. 255767, 2005 WL 3179736 (Mich. App. Nov. 29, 2005), the Michigan Court of Appeals addressed this jury selection issue. First, the court found that the defendant in *Parker* ignored "that it was her burden to prove that there was a systematic exclusion of African-Americans." *Parker*, 2005 WL 3179736 at * 3, citing *People v. McKinney*, 258 Mich. App. 157, 161; 670 N.W.2d 254 (2003). Second, the court found that the defendant improperly expanded the record to include newspaper articles from the *Grand Rapids Press*, which reported that there was an underrepresentation of African Americans in Kent County jury venires in 2001 and 2002, which was detected in July 2002. *Parker*, 2005 WL 3179736 at *3. *Accord*, *McKinney*, 258 Mich. App. at 161 n. 4 ("[t]his Court may not take judicial notice of newspaper articles as they constitute hearsay"). Third, the court found that the defendant's newly offered evidence, i.e., Kent County's July 2002 announcement, reflects the existence of errors in 2001 and 2002, but "does not support a claim that there may have been a systematic problem with underrepresentation of African-Americans in 2004, when defendant's case was tried." *Parker*, 2005 WL 3179736 at *3.

8

Petitioner's trial occurred in September 1998. *See* Trial Trans. I - XIII. Even if the court accepted the *Michigan Lawyers Weekly* hearsay statements at face value, and concluded that errors existed in the Kent County jury venires in 2001 and 2002, these statements do not establish that such "errors" existed when petitioner was tried in September 1998. In short, petitioner presents no evidence that his jury in 1998 was subject to the errors that reportedly occurred in 2001 and 2002. Accordingly, petitioner has failed to demonstrate cause for the procedural default. In the absence of cause, it is unnecessary to consider any prejudice resulting from this alleged error of federal law.

The issue of a fundamental miscarriage of justice is dismissed below. See Section C.

### 2.    **Prosecutorial misconduct**

Next, petitioner asserts ineffective assistance of appellate counsel as cause for his failure to raise the prosecutorial misconduct issues raised in Issues II and III. It appears that petitioner is also asserting independent claims of ineffective assistance of appellate counsel for failing to raise these new prosecutorial misconduct claims. The court rejects all of petitioner's ineffective assistance claims for the reasons stated below.

Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see Murray*, 477 U.S. at 488, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington.* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court, set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a

9

fair trial, a trial whose result is reliable." *Id.* at 687. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486-87.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* As a general rule, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). In this regard, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner's appellate counsel raised three issues, including three sub-issues regarding alleged prosecutorial misconduct. In his present Issues II and III, petitioner raises additional claims of prosecutorial misconduct. To demonstrate ineffective assistance of appellate counsel as cause, petitioner must demonstrate that these two new claims of prosecutorial misconduct were stronger than the five claims raised on appeal.

Prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial before habeas corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). The appropriate standard of review for a prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* The court should consider four factors in determining whether a prosecutorial remark rises to the level of a due process violation: "(1) whether the remark tended to mislead the jury or to prejudice the accused; (2) whether the remark was isolated or extensive; (3) whether the remark was accidentally or deliberately placed before the jury; and (4) the strength of the evidence against the accused." *Hutchison*, 303 F.3d at 750.

      **a.**     **Prosecutor's reference to petitioner's religious beliefs (Issue II)**

In Issue II, petitioner contends that the prosecutor improperly referenced the sincerity of petitioner's religious faith to demonstrate a lack of credibility. On direct examination, petitioner stated that his name was Naeem Saleem Wahdi. Trial Trans. IX at 37. Petitioner testified that he changed his name from James Kelly Davis to Naeem "because of my Islamic beliefs." *Id.* Petitioner testified that he did not call 9-1-1 after he shot the victim because he was scared. Trial Trans. IX at 86-93. Rather, he paged his attorney and "started reading passages out of my Koran trying to find me some more guidance." Trial Trans. IX at 86-93, 148. Petitioner explained that he was a Muslim, and that the Koran is "a Muslim Bible that, you know, we look into as, you know, just like the Holy Bible when you find your faith and guidance and everything." *Id.* at 93-94. During this time, petitioner engaged in a conversation with his aunt's friend, a Jehovah's witness, for 30 or 45

11

minutes, just to talk about "the Koran and our religion." *Id.* at 94.   In closing argument, petitioner's counsel raised his religious faith to bolster both petitioner's credibility and his claim of self-defense, stating that petitioner returned to the scene of the crime because "[h]e was talking about his faith, he was talking about his religion, made the decision to go back and make things right."  Trial Trans. XI at 62.  The prosecutor made the following statement in rebuttal to this argument:

> Now I wasn't going to say anything at first but if there's an issue of credibility there was another lie, not a lie but think about this.  The defendant testifies that he's a Muslim and that he believes in the Koran, reads from the Koran, but the letter he sent to [witness] Marcus Hester when he was in jail quoted the Bible not the Koran, okay.  How sincere is he about that?  Calls into question the credibility of the defendant.

Trial Trans. XI at 70.[2]  Petitioner contends that the prosecutor's comments violated his First Amendment rights because it conveyed a message of disapproval of petitioner's religion.

"To establish a claim of prosecutorial misconduct, a defendant must first prove that the prosecutor made an improper remark." *United States v. Chirinos*, 112 F.3d 1089, 1098 (11th Cir. 1997).  Here, petitioner's claim fails because the prosecutor's challenged statements were not improper. Michigan has both a statute and an evidentiary rule relating to this issue.  MCL § 600.1436 provides in part that "[n]o witness may be questioned in relation to his opinions on religion."  Similarly, MRE 610, which mirrors FRE 610, provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by means of their nature the witness' credibility is impaired or enhanced."   The purpose of such evidentiary rules "is to guard against the prejudice which may result from disclosure of a witness's faith." *United States v. Sampol*, 636 F.2d 621, 666 (C.A.D.C. 1980). *See, e.g., Pham v. Beaver*, 445 F.Supp.2d 252, 259 (W.D.N.Y.,2006) ("it is highly improper for the prosecutor to attempt to bolster a witness's credibility on the basis that he subscribes to a particular religion, or to suggest that a witness is more credible simply because he is religious"); *People v. Jones*, 82 Mich.App. 510, 516,

---

[2] Petitioner agrees that the letter to Marcus Hester included a quote from the Christian New Testament, First Corinthians 13:1-3.  *See* Petitioner's Brief in support of motion for relief from judgment (docket no. 37).

267 N.W.2d 433 (1978) ("[t]he purpose of the statute is to strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness").

Here, however, the prosecutor did not inject petitioner's religion into the trial contrary to the rules of evidence. On the contrary, petitioner commenced his testimony by pointing out that he was Muslim. Petitioner utilized his religious practice as part of his defense, comparing the Koran to the Bible and using his religious beliefs and knowledge of Islam to explain his actions after the shooting. Specifically, petitioner returned to the scene of the crime only after he sought guidance in the Koran and held a religious discussion with a non-Muslim. When petitioner used his religion and religious beliefs to support his claim of self-defense, to explain his whereabouts and actions undertaken after the crime, and to bolster his credibility before the jury, he injected the issue of his religious beliefs into the criminal prosecution. "A person's beliefs, superstitions, or affiliation with a religious group is properly admissible where probative of an issue in a criminal prosecution." *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996). Under the circumstances of this case, in which petitioner introduced his religious beliefs to explain his intent, actions and whereabouts after the crime, it appears to the court that the prosecutor could question the sincerity or knowledge of petitioner's religious beliefs. *See Beasley*, 72 F.3d at 1527 (in rejecting criminal defendant's claim that the government obtained a conviction by condemning defendant's religion, the court noted that it was "important to our analysis that [the defendant] himself sought to interject religion" as an issue at trial).

Furthermore, even if the statements were improper, they did not violate petitioner's due process rights. The prosecutor only placed this issue in front of the jury in his rebuttal to petitioner's closing argument. However, for the reasons discussed above, this isolated statement commenting upon petitioner's sincerity or purported knowledge of his religion, did not tend to mislead the jury or prejudice petitioner. *See Hutchison*, 303 F.3d at 750. Furthermore, substantial

13

evidence supported the conviction.[3] *Id.* Petitioner does not dispute that he killed the victim, but claimed that it was in self-defense. Trial Trans. IX at 112-13, 147-49. Marcus Hester contradicted this claim, when he testified that petitioner shot the victim twice in the head while the victim was lying on the floor begging for his life, and that petitioner asked Hester to help dispose of the body. Trial Trans. III at 80-89. Other evidence established that petitioner engaged in acts to conceal the murder. Ruben Vance testified that he saw petitioner trying to clean up blood with a spray bottle, changing his clothes and looking for shells ejected from the murder weapon. Trial Trans. IV at 82-94. Marvin Hester also saw petitioner with a spray bottle and rag, apparently cleaning the house where the murder occurred. Trial Trans. VI at 103.

Because petitioner did not have a viable prosecutorial misconduct claim, his appellate counsel was not ineffective for failing to raise this claim on appeal. *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676. Accordingly, petitioner has failed to establish ineffective assistance of appellate counsel, either as cause for the procedural default of this issue or as a separate claim.

**b.     Prosecutor's reference to a "jailhouse lawyer" (Issue III)**

In Issue III, petitioner contends that he was denied a fair trial when the prosecutor engaged in misconduct by eliciting testimony that petitioner spoke to a "jailhouse lawyer." Petitioner further contends that such testimony informed the jury that he was incarcerated prior to trial and suggested that he created the self-defense claim upon the advice of this "jailhouse lawyer."

Petitioner's claim arises from the testimony of Marcus Hester, a rebuttal witness for the prosecution.[4] Marcus testified that approximately one month prior to the trial, he met with petitioner and that petitioner had been talking to a "jail-house lawyer," whom Marcus described as "some educated idiot." Trial Trans. X at 43-45. The prosecutor attempted to elicit testimony that the "jail-house lawyer' or someone else "put this idea in [petitioner's] head . . . to offer this self-

---

[3]The court notes that petitioner does not contest the Michigan Court of Appeals' determination that sufficient evidence supported the conviction. *People v. Davis*, No. 217370, slip op. at 1-2.

[4] Marcus Hester is identified in the transcript as "Marcus Gaines." Trial Trans. X at 22.

defense claim." *Id.* at 46. Marcus, however, did not explicitly testify that this jail-house lawyer gave petitioner such advice. *Id.* On cross-examination, petitioner's counsel also referred to Marcus visiting petitioner in jail four weeks prior to trial. *Id.* at 54. Finally, in his rebuttal to petitioner's closing argument, the prosecutor referred to "the letter that [petitioner] sent to Marcus Hester when he was in jail." Trial Trans. XI at 70.

The prosecutor's brief statements regarding petitioner's pre-trial incarceration did not prejudice petitioner. The prosecutor did not suggest that petitioner was incarcerated as the result of another criminal conviction, nor did the prosecutor explore petitioner's relationship with the jailhouse lawyer. The prosecutor's isolated statements, made during the course of a 13-day trial, did not render the trial fundamentally unfair. *See, e.g., Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1244 (E.D. Mich. 1993) ("fleeting, context-setting references to pre-trial detention" did not render defendant's trial fundamentally unfair or deny him due process of law).

Because petitioner did not have a viable prosecutorial misconduct claim, his appellate counsel was not ineffective for failing to raise this meritless claim on appeal. *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676. Accordingly, petitioner has failed to establish ineffective assistance of appellate counsel, either as cause for the procedural default of this issue or as a separate claim.

### C. Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find

15

him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's claims are procedurally barred and not subject to habeas review.

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Entered:  July 3, 2007                                      /s/ Hugh W. Brenneman, Jr.
                                                                          HUGH W. BRENNEMAN, JR.
                                                                          United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).